## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY KING,                                  )
                                            )
        Plaintiff,                          )
                                            )
        v.                                  )      Civil Action No. 04-374 Erie
                                            )
JO ANNE B. BARNHART,                        )
Commissioner of Social Security,            )
                                            )
        Defendant.                          )

## MEMORANDUM OPINION

McLAUGHLIN, J.

       Plaintiff, Gary King, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security

denying his claims for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et*

*seq.*  Plaintiff protectively filed applications for DIB and SSI on November 27, 2002, alleging

disability since July 18, 2002 due to a seizure disorder, chronic obstructive pulmonary disease,

and thrombosis (Administrative Record, hereinafter "AR", 68, 150-152, 322-324).  His

applications were denied, and he requested a hearing before an administrative law judge ("ALJ")

(AR 62, 64-66, 318-321).

       Following a hearing held October 7, 2003, the ALJ found that Plaintiff was not entitled to

a period of disability or disability insurance, and was not eligible for SSI benefits under the Act

(AR 67-74).  Plaintiff's request for review by the Appeals Council was denied (AR 6-9),

rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action

challenges the ALJ's decision.  Presently pending before the Court are cross-motions for

summary judgment.  For the reasons set forth below, we will deny Plaintiff's motion, and grant

Defendant's motion.

## I. Background

King was born on September 20, 1956, and was forty-seven years old on the date of the ALJ's decision (AR 68, 150). He has a ninth grade education, and past relevant work experience as a machine operator and painter (AR 164, 169).

On March 6, 2002, Edward Janus, D.O., reported that King had been his patient for many years, and that his main problem was grand mal and petit mal seizures (AR 245). He was placed on Dilantin in December 2001 (AR 247). King also had seizure activity associated with excessive alcohol abuse (AR 245). Dr. Janus indicated that King had been relatively asymptomatic until approximately March 2001, when he developed several seizures, one associated with alcohol usage and one not associated with alcohol usage (AR 245). Following his second seizure in February 2002, Dr. Janus increased his Dilantin level (AR 247). He reported that King's Dilantin levels had been followed very carefully, and he was doing relatively well (AR 245). His last EEG was within normal limits (AR 247). Dr. Janus further indicated that King's cardiopulmonary status appeared to be stable (AR 245). He opined that King could seek gainful employment since his seizures were fairly well controlled with medication as long as he did not use alcohol (AR 245).

On March 7, 2002, Nghia Tran, M.D., a state agency reviewing physician, reviewed the medical evidence of record and opined that King could perform heavy work that did not involve exposures to hazards (AR 248-252). Dr. Tran agreed with Dr. Janus' opinion that King could seek gainful employment (AR 257).

King presented to the emergency room on July 18, 2002 reporting a possible seizure (AR 261). Dr. Janus performed an EKG, which revealed normal sinus rhythm and nonspecific ST and T wave changes (AR 266).

On November 11, 2002, Dr. Janus completed a Pennsylvania Department of Public Welfare Employability Assessment Form, and opined that King was temporarily disabled from November 11, 2002 until approximately November 11, 2003 due to a primary diagnosis of a

seizure disorder and rectal bleeding, and a secondary diagnosis of alcoholism (AR 235-236).

On February 16, 2003, King was admitted to the hospital with a chief complaint of left leg pain (AR 312). A venogram was performed which revealed evidence of thrombosis involving the common femoral and the femoral vessels (AR 309). Although a chest x-ray demonstrated chronic obstructive pulmonary disease, King denied shortness of breath or chest pain (AR 308, 311-312). His hospitalization was unremarkable and at the time of discharge, his leg pain had improved and he walked without difficulty (AR 312). His discharge diagnosis was deep venous thrombophlebitis (AR 312).

On March 4, 2003, Douglas Schiller, Ph.D., a state agency reviewing psychologist, opined that King had only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence or pace, and no episodes of decompensation (AR 279). Dr. Schiller concluded that while some level of substance abuse was present, King did not have a "severe" mental impairment (AR 269, 277).

Finally, King presented to the emergency room on August 3, 2003 stating that he had a seizure while riding his bike, which caused him to fall and injure his right shoulder (AR 290). He admitted that he had been drinking at the time of the fall (AR 290). X-rays revealed a mildly displaced fracture of the distal right clavicle (AR 285).

King and Karen S. Krull, a vocational expert, testified at the hearing held by the ALJ on October 7, 2003 (AR 88-117). King testified that he was unable to work due to grand mal seizures (AR 93). He indicated that he had experienced seven seizures within the previous year (AR 93). He claimed that his medication made him so drowsy that he needed to sleep for two to fours hours one to two times a day (AR 93, 105, 108). King further testified that he had a blood clot in his left leg, which discolored his ankle (AR 98). He claimed his leg became swollen when he walked or stood for long periods of time (AR 98). When swollen, his ankle was painful and needed elevation (AR 112). King was able to clean his room, cook, wash dishes, sweep and mop the floor, go to the grocery store, watch television and visit friends (AR 101-103). He

3

testified that he walked to the hearing, as he did not drive a car, and was capable of walking to his mother's residence, which took him approximately ten minutes (AR 103-105).

The vocational expert was asked to consider an individual of King's age, education, and vocational background, who was capable of performing work at all exertional levels, but could not be exposed to heights, moving machinery, fumes, odors, gases, dust, chemicals and temperature extremes (AR 115). The vocational expert testified that such an individual could perform the jobs of a cashier and order clerk at the light exertional level, and the job of an alarm monitor at the sedentary level (AR 115-116). The vocational expert further testified that such an individual would not be able to maintain the identified jobs if he were off task for approximately twenty-five percent of the workday ten days a month (AR 116).

Following the hearing, the ALJ issued a written decision which found that King was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 67-74). King's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 6-9). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that

they are unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels.  42 U.S.C. § 1382(a).  A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI.  *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a).  In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c).  The ALJ found that King met the disability insured status requirements of the Act through the date of her decision (AR 73).  SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability.  *Bowen,* 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past.  *Id.*  If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.  The ALJ resolved King's case at the fifth step.  At step two, the ALJ determined that King's seizure condition was a severe impairment, but determined at step three

that he did not meet a listing (AR 69).[1]  At step four, the ALJ determined that he had the residual

functional capacity to perform work at all exertional levels that did not involve exposure to

heights, moving machinery, fumes, odors, gases, dust, chemicals and temperature extremes (AR

73).  At the final step, the ALJ determined that King could perform the jobs cited by the

vocational expert at the administrative hearing (AR 73).  Again, we must affirm this

determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

As previously indicated, the ALJ concluded that King had the residual functional

capacity to perform, *inter alia,* the light exertional jobs of a cashier and an order clerk (AR 115-

116).  "Light work" is defined under the Commissioner's regulations as requiring the lifting of

no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to

ten pounds.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Social Security Ruling (*"SSR")

83-10; 1983 WL 31251 at *5.  "Frequent" is defined as occurring from one-third to two-thirds of

the time.  *SSR* 83-10; 1983 WL 31251 at *6.  Thus, "light work requires standing or walking, off

and on, for a total of approximately 6 hours of an 8-hour workday."  *Id.*

King's sole argument is that his testimony "clearly" establishes that he is incapable of

standing or walking for long periods of time, and further, that his medication causes debilitating

drowsiness.  *See Plaintiff's Brief* p. 6.  In essence, King challenges the ALJ's credibility

determination.  In this regard, we note that the ALJ, as the finder of fact, can reject, partially or

fully, subjective complaints if he finds them not credible based on other evidence in the record.

*See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974).

We find that substantial evidence supports the ALJ's determination that King's

allegations of drowsiness and his alleged inability to engage in prolonged standing or walking

were not supported by the medical evidence or the record as a whole.  With respect to King's

---

[1]The ALJ further found that King's chronic obstructive pulmonary disease and
thrombosis were not severe impairments since there was no conclusive evidence that these
conditions had remained severe for a continuous period of at least twelve months beyond his
alleged onset date of July 2002 (AR 69).

alleged drowsiness, the ALJ considered his testimony in this regard, but found that "there [was] no confirmation of any significant side effects such as drowsiness, as he reported at his hearing" (AR 71).

We find no error in this regard.  In *Burns v. Barnhart*, 312 F.3d 113 (3ʳᵈ Cir. 2002), the court noted that side effects often accompany the taking of medication, and "it should not be viewed as disabling unless the record references serious functional limitations."  *Burns*, 312 F.3d at 131.  Here, King fails to identify, and our review of the record fails to reveal, medical evidence substantiating debilitating drowsiness caused by his seizure medications.

King's remaining allegation that he was unable to stand or walk for prolonged periods of time is similarly completely lacking in medical support.  The ALJ found that there was no indication from Dr. Janus' reports that King continued to experience serious difficulties with ambulation, swelling, or severe leg pain (AR 69).  She further noted that he did not require an assistive device for ambulation, and was able to "get about" on a regular basis (AR 69).  Finally, she observed that King showed no signs of any significant problems involving his left leg at the hearing (AR 71).  To reiterate, King himself testified that he walked to the hearing and was capable of ten minute walks to his mother's residence (AR 103-104).

Finally, King claims that he should have been found disabled pursuant to the medical-vocational guidelines (the "grids").  In 1978, the Secretary of Health and Human Services revised the system for determining whether jobs exist in the national economy by promulgating the grids.  *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  Previously, this issue "was generally determined through reference to testimony by vocational experts."  *Id.*  The grids changed the system by establishing vocational rules that could be mechanically applied to direct a decision of "disabled" or "not disabled" after consideration of the claimant's residual functional capacity, age, education and work experience.  *See Santise v. Schweiker*, 676 F.2d 925, 928 (3d Cir. 1982).  However, in order to mechanically apply a grid rule to direct a decision of "disabled" or "not disabled", the claimant's residual functional capacity, age, education and

work experience must coincide exactly with those in the rule.  *See Mason,* 994 F.2d at 1064; *Santise* 676 F.2d at 928; Social Security Ruling (*"SSR"*) 83-11, 1983 WL 31252, at 2.

Here, King specifically relies on Rule 201.12, which directs a finding of "disabled" where a claimant has the RFC for sedentary work, is "closely approaching advanced age", possesses a high school education or more which does not allow direct entry into skilled work, and has previous unskilled work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.12.  King's reliance on Rule 201.12 is misplaced however, since he is *not* an individual closely approaching advanced age.  A "person closely approaching advanced age" is a person "age 50-54."  20 C.F.R. § 404.1563(d); *Brophy v. Halter*, 153 F. Supp. 2d 667, 670 (E.D.Pa. 2001).  It is undisputed that King was forty-seven years old on the date of the ALJ's decision, and, as the ALJ found, is classified as a "younger individual" (AR 73).  *See* 20 C.F.R. § 404.1563(c) (younger person is under age 50).  Consequently, Rule 201.12 has no application to King's case, and we find no error in this regard.

## IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GARY KING,                                    )
                                              )
              Plaintiff,                      )
                                              )
              v.                              )          Civil Action No. 04-374 Erie
                                              )
JO ANNE B. BARNHART,                          )
Commissioner of Social Security,              )
                                              )
              Defendant.                      )

**ORDER**

AND NOW, this 19th day of April, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 14] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 18] is GRANTED.  JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Gary King.  The clerk is directed to mark the case closed.


                                        s/ Sean J. McLaughlin
                                        United States District Judge

cm: All parties of record.